JUDGE BERMAN

11 CV 2338

Donald E. Watnick (DW 6019)
LAW OFFICES OF DONALD WATNICK
122 East 42nd Street, Suite 606
New York, New York 10168
(212) 213-6886
*Attorneys for Plaintiff Wells Fargo Bank, N.A.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------- x

WELLS FARGO BANK, NATIONAL
ASSOCIATION,

                              Plaintiff,

              - against -

CITIGROUP GLOBAL MARKETS, INC.

                              Defendant.

------------------------------------------------------------------- x

RECEIVED
APR 05 2011
U.S.D.C. S.D. N.Y.
Case No. CASHIERS

**COMPLAINT**

        Plaintiff Wells Fargo Bank, National Association ("Wells Fargo" or "plaintiff"),

by its undersigned attorneys the Law Offices of Donald Watnick, for its Complaint

against defendant Citigroup Global Markets, Inc. ("CGMI" or "defendant") hereby

alleges and avers as follows:

## Summary of Claim

        1.      In this action, Wells Fargo, as Trustee for the issuer of Huntington Class P

Principal Protected Notes (the "Class P Notes"), seeks restitution or damages based upon

Wells Fargo making a duplicative delivery of securities and payment to CGMI in April

and May 2008, in connection with a securities offering known as the Huntington CDO.

CGMI was not entitled to both the delivery of securities and the subsequent payment.

CGMI has refused to return the securities or the payment and has retained them.

Accordingly, Wells Fargo seeks recovery of the securities or the payment.

1

## The Parties

2. Plaintiff Wells Fargo is a national banking corporation organized under the laws of the United States, and a citizen of the State of South Dakota by virtue of its articles of organization designating South Dakota as the state where its main office is located. Wells Fargo brings this action in its capacity as trustee for the issuer of the Class P Notes.

3. Defendant CGMI is a corporation organized under the laws of the State of New York with, upon information and belief, its principal place of business in New York County, New York.

## Jurisdiction and Venue

4. This Court has jurisdiction over this matter based on diversity of citizenship, pursuant to 28 U.S.C. §1332(a), because the parties are citizens of different states and the amount in controversy exceeds $75,000.

5. Venue is appropriate in this District, pursuant to 28 U.S.C. § 1391, because defendant is subject to personal jurisdiction and resides in this District.

## Factual Allegations

6. The Huntington CDO Offering (the "Offering") involved the offering of two classes of notes – secured notes (the "Secured Notes") and the Class P Notes -- and Preference Shares in the issuer. Holders of interests in the Secured Notes and Preference Shares were eligible to receive earnings from the Offering's investments in collateralized debt obligations; holders of the Class P Notes were eligible to receive earnings from the Preference Shares and from the sale of U.S. Treasury STRIPS.

2

7.      The claims here relate to CGMI's exchange of its Class P Note for the
Preference Shares and U.S. Treasury STRIPS and CGMI's subsequent receipt of payment
as if that exchange had not occurred.

8.      In or about March 2005, Huntington CDO, Ltd. ("Huntington Ltd." or the
"Issuer") and its co-Issuer, Huntington CDO, Inc. ("Huntington Inc." or the "Co-Issuer")
issued the Secured Notes, and the Issuer concurrently issued the Class P Notes and
Preference Shares.

9.      According to the terms of an Indenture dated as of March 29, 2005
involving the Issuer, the Co-Issuer and Wells Fargo (the "Indenture"),  Wells Fargo was
designated as "trustee" for the Issuer and Co-Issuer for the purpose of exercising rights
with respect to the Offering. The Indenture granted Wells Fargo, as trustee, all the
Issuer's right, title and interest in all accounts, chattel paper, instruments, securities,
deposit accounts and other securities, including the U.S. Treasury STRIPS, in connection
with the Offering, and appointed Wells Fargo as the Issuer's true and lawful attorney
with extensive powers to exercise rights of the Issuer, including pursuing, as Wells Fargo
deems necessary and advisable, claims relating to the Class P Notes.

10.     The proceeds from the offering of the Class P Notes were used to
purchase, for the benefit of the Class P Note holders, non-interest bearing U.S. Treasury
STRIPS and Preference Shares. The Offering included three classes of principal protected
Class P Notes – Class P-1, Class P-2 and Class P-3 -- all of which consisted of two
components: U.S. Treasury STRIPS and Preference Shares.

11.    At the time of the closing of the Offering, on or about March 29, 2005,

CGMI purchased a face value $10 million Class P-3 Note. The total face value of the

Class P-3 Notes issued as part of the Offering was $35 million.

12.    The Class P-3 Notes incorporated by reference the terms of the Indenture

between the Issuer and Wells Fargo. Accordingly, CGMI was bound by the terms of the

Class P-3 Notes and Indenture.

13.    The Class P Notes did not provide for a set or minimum payment of

interest, dividends or distributions. Rather, Class P Note holders were eligible to receive

payments based upon distributions from income the Offering allocated to the Preference

Shares associated with their interest in the Class P Notes, if any, and the quarterly sale of

the U.S. Treasury STRIPS allocated to their interests in the Class P Notes.

14.    Payments on all of the Class P Notes, from both the Preference Shares and

sales of U.S. Treasury STRIPS, were to be made on the designated payment dates of

February 5, May 5, August 5 and November 5 of each calendar year (a "Payment Date").

Each payment reduced the principal value of the respective Class P Note, and each sale of

U.S. Treasury STRIPS reduced the remaining value of such securities allocated to each

respective Class P Note.

15.    According to the Indenture and the Class P Note, the proceeds from the

sale of U.S. Treasury STRIPS to be included in any quarterly payment to Class P Note

holders were based on such sales that would occur one business day before the applicable

Payment Date.

4

16.     The Indenture provided that a holder of a Class P Note could redeem its interest and receive in exchange its ratable share of the underlying component securities – the Preference Shares and the U.S. Treasury STRIPS.

17.     On or about April 22, 2008, CGMI issued a letter of directions to redeem its $10,000,000 face value Class P-3 Note and receive the underlying Preference Shares and remaining U.S. Treasury STRIPS associated with its Class P-3 Note.

18.     On or about April 23, 2008, Wells Fargo redeemed CGMI's Class P-3 Note and delivered to CGMI's account the underlying 3,551 Preference Shares and U.S. Treasury STRIPS with a face value of $6,031,000.00 (the "$6,031,000.00 U.S. Treasury STRIPS") that remained allocated to its Class P-3 Note.

19.     On May 5, 2008, Wells Fargo made a regular quarterly payment (the "May 5th Payment") to all holders of Class P-3 Notes based upon earnings allocated to Class P-3 Notes from the Preference Shares and a sale, on or about May 1, 2008, of U.S. Treasury STRIPS associated with each of the holders' Class P-3 Notes.

20.     While CGMI had redeemed its Class P-3 Note before that Payment Date, Wells Fargo nonetheless included CGMI as a recipient of the May 5th Payment, and paid CGMI $512,333.80, consisting of $115,429.17 in payments on the Preference Shares and $396,904.63 in payments from the sale of U.S. Treasury STRIPS. (At this time, the $115,429.17 portion of that payment to CGMI on the Preference Shares is not at issue.)

21.     CGMI was not entitled to receive both a full redemption of the U.S. Treasury STRIPS associated with its Class P Note on April 23, 2008 and $396,904.63 in proceeds from the sale of U.S. Treasury STRIPS on May 1, 2008 as part of the May 5th

Payment. Thus, Wells Fargo mistakenly made and CGMI mistakenly received a duplicative delivery of securities and a payment.

22.    In order for CGMI to receive the $396,904.63 portion of the May 5th Payment, its receipt of U.S. Treasury STRIPS on April 23, 2008 should have been reduced by U.S. Treasury STRIPS with a face value of $513,000.00, which should have been retained by Wells Fargo.

23.    Wells Fargo has demanded that CGMI return U.S. Treasury STRIPS with a face value of $513,000.00 and identified by CUSIP No. 912833KE9 (the "$513,000.00 U.S. Treasury STRIPS") or $396,904.33 from the May 5th Payment.

24.    CGMI has refused to do so.

25.    Accordingly, Wells Fargo has been damaged and is entitled to recover the $513,000.00 U.S. Treasury STRIPS improperly delivered to CGMI on April 23, 2008, or damages in an amount to be determined at trial but equal to a minimum of $396,904.63, plus interest.

## FIRST CAUSE OF ACTION
## (Breach of Contract)

26.    Plaintiff repeats and realleges the allegations set forth in paragraphs 1 to 25 as if fully set forth herein.

27.    CGMI's interest in the Class P-3 Notes was governed by the terms of the Note, which incorporated by reference the terms of the Indenture.

28.    Under the Note and the Indenture, CGMI was entitled to receive payments associated with the sale of U.S. Treasury STRIPS during the time that CGMI held its Class P-3 Note, based on the sale of U.S. Treasury STRIPS allocated to its Class P-3 Note.

6

29.   Under the Class P-3 Note and the Indenture, CGMI was entitled to exchange its Class P-3 Note for its ratable share of U.S. Treasury STRIPS, based on the remaining U.S. Treasury STRIPS allocated to its interest as adjusted based on prior sales of U.S. Treasury STRIPS, and Preference Shares.

30.   CGMI redeemed its interest in the Class P-3 Notes on or about April 23, 2008, at which time it received delivery of all of the U.S. Treasury STRIPS and Preference Shares associated with its Class P-3 Note.

31.   On or about May 5, 2008, CGMI received a payment resulting from the sale of U.S. Treasury STRIPS for the benefit of Class P-3 Note holders in the amount of $396,904.63.

32.   Under the Class P-3 Note and Indenture, CGMI was not entitled to receive both the $513,000.00 U.S. Treasury STRIPS included in the delivery of $6,013,000.00 U.S. Treasury STRIPS on April 23, 2008 and the $396,904.33 portion of the May 5th Payment.

33.   Despite due demands, CGMI has refused to return either the $513,000.00 U.S. Treasury STRIPS that CGMI received on April 23, 2008, or the $396,904.33 payment, in violation of the terms and conditions of the Note and the Indenture.

34.   Wells Fargo, as trustee, has fully performed all obligations under the Note and Indenture relating to CGMI's foregoing interest in the Class P-3 Notes.

35.   By virtue of the foregoing, plaintiff is entitled to recover the $513,000.00 U.S. Treasury STRIPS delivered on April 23, 2008, or damages in an amount to be determined at trial but equal to a minimum of $396,904.63, plus interest.

## SECOND CAUSE OF ACTION
### (Unjust Enrichment)

36.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 to 35 as if fully set forth herein.

37.     On April 23, 2008, defendant received from plaintiff delivery of $6,013,000.00 U.S. Treasury STRIPS, and on May 5, 2008, defendant received from plaintiff a payment in the amount of $396,904.63 in connection with the sale of U.S. Treasury STRIPS on or about May 1, 2008.

38.     Defendant had no right to receive and retain both the $513,000.00 U.S. Treasury STRIPS included in the delivery of $6,013,000.00 U.S. Treasury STRIPS on April 23, 2008 and the $396,904.63 payment on May 5, 2008.

39.     Plaintiff, in its capacity as trustee for the Issuer, is entitled to possess and utilize the $513,000.00 U.S. Treasury STRIPS delivered on April 23, 2008 or $396,904.63 of the May 5th Payment.

40.     By virtue of the foregoing, defendant has been unjustly enriched, at plaintiff's expense, and it would be inequitable for defendant to not return to plaintiff the $513,000.00 U.S. Treasury STRIPS delivered to defendant on April 23, 2008 or pay to plaintiff the full amount of the $396,904.63 that defendant incorrectly received, plus interest.

## THIRD CAUSE OF ACTION
### (Mistake)

41.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 to 40 as if fully set forth herein.

8

42.     On April 23, 2008, plaintiff delivered to defendant $6,013,000.00 U.S. Treasury STRIPS, and on May 5, 2008, plaintiff paid defendant the amount of $396,904.63.

43.     It was a mistake for plaintiff to make and for defendant to receive and retain the $513,000.00 U.S. Treasury STRIPS included in the $6,013,000.00 U.S. Treasury STRIPS delivered on April 23, 2008 and the payment of $396,904.63.

44.     Defendant has benefitted from this mistake by having the use of both $513,000.00 U.S. Treasury STRIPS and $396,904.63 in funds, even though both of the foregoing do not belong to defendant and defendant has no right to retain both of the foregoing.

45.     By virtue of the foregoing, it would be inequitable for defendant not to return to plaintiff the $513,000.00 U.S. Treasury STRIPS delivered on April 23, 2008 or $396,904.33 from the May 5th Payment, plus interest.

## FOURTH CAUSE OF ACTION
### (Conversion)

46.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 to 45 as if fully set forth herein.

47.     Plaintiff, as trustee, has the exclusive rights to the $396,904.63 portion of the May 5th Payment that was paid to defendant, or to $513,000.00 U.S. Treasury STRIPS that were delivered to defendant on April 23, 2008.

48.     Plaintiff has demanded that defendant return $396,904.63 or the $513,000.00 U.S. Treasury STRIPS, and defendant has refused to do so.

49.     Defendant has wrongfully retained possession of both the $396,904.63

payment and the $513,000.00 U.S. Treasury STRIPS without any legal basis and in

derogation of plaintiff's rights to such funds or U.S. Treasury STRIPS.

50.     In view of the foregoing, defendant has wrongfully converted the

$513,000.00 U.S. Treasury STRIPS delivered to defendant on April 23, 2008 or

$396,904.63 paid to defendant on May 5, 2008, and plaintiff is entitled to a return of the

$513,000.00 U.S. Treasury STRIPS delivered to CGMI or damages in an amount to be

determined at trial, but in no event less than $396,904.63, plus interest.

## FIFTH CAUSE OF ACTION
### (Money Had and Received)

51.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 to

50 as if fully set forth herein.

52.     On May 5, 2008, defendant received a mistaken payment in the amount of

$396,904.63 belonging to plaintiff, as trustee.

53.     Defendant has benefitted from this mistaken payment by having the use of

funds that do not belong to it and to which it has no rights to retain.

54.     By virtue of the foregoing, as a matter of law and under principles of

equity and good conscience, defendant should not be permitted to keep the mistaken

portion of the May 5th Payment and should return to plaintiff an amount to be determined

at trial, but in no event less than $396,904.63, plus interest.

## SIXTH CAUSE OF ACTION
### (Replevin)

55.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 to

54 as if fully set forth herein.

10

56.     At all times, plaintiff, as trustee, was lawfully entitled to possession of the

$513,000.00 U.S. Treasury STRIPS.

57.     At all times, defendant was not entitled to possession of the $513,000.00

U.S. Treasury STRIPS and defendant has improperly and unlawfully withheld possession

of the same from plaintiff.

58.     Plaintiff requested that defendant return the $513,000.00 U.S. Treasury

STRIPS.

59.     Defendant has refused to return and has retained the $513,000.00 U.S.

Treasury STRIPS.

60.     Accordingly, plaintiff is entitled to recover from defendant the

$513,000.00 U.S. Treasury STRIPS, or to damages in an amount to be determined at trial

but equal to no less than the cost of replacing the $513,000.00 U.S. Treasury STRIPS.

        WHEREFORE, plaintiff Wells Fargo Bank, National Association, demands

judgment from defendant Citigroup Global Markets, Inc. as follows:

>       (i)     return of the $513,000.00 U.S. Treasury STRIPS identified by
>       CUSIP No. 912833KE9, or damages in an amount to be determined at trial
>       but equal to at least $396,904.63, plus interest;

>       (ii)    costs and disbursements incurred by plaintiff; and

>       (iii)   such other relief as this Court deems just and proper.

Dated:  New York, New York
        April 5, 2011

                        LAW OFFICES OF DONALD WATNICK
                        By:  _____

                        Donald E. Watnick (DW 6019)
                        *Attorneys for Plaintiff Wells Fargo Bank, N.A.*
                        CHANIN BUILDING
                        122 East 42nd Street, Suite 606
                        New York, New York 10168
                        (212) 213-6886

11